### INDUSTRIAL RAYON CORPORATION
v.
### The UNITED STATES.
### No. 351–53.

United States Court of Claims.
Oct. 9, 1957.

---

Henry C. Harvey, Cleveland, Ohio, for plaintiff. Jones, Day, Cockley & Reavis, Cleveland, Ohio, were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen., Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This is a suit to recover interest alleged to have been erroneously assessed and collected on income and excess profits tax deficiencies for 1942 and 1943.

Plaintiff also alleges a claim for additional interest due it on overassessment of excess profits tax for the year 1942.

Plaintiff's petition sets forth five causes of action, two of which the parties have settled prior to argument and submission of the case. We therefore direct our attention to the remaining three causes of action.

The problem presented involves the interrelationship of the World War II excess profits tax and the relief and carryback provisions provided against such tax as found in the Internal Revenue Code of 1939.[1] The facts as stipulated by the parties, briefly stated, are as follows:

The plaintiff, hereinafter referred to as "Rayon," filed income and excess profits tax returns on a calendar year basis for 1942 to 1945, inclusive. For 1942 and 1943, Rayon deferred payment of a portion of its excess profits tax under the provisions of section 710(a) (5).[2] The amounts of taxes so deferred were $1,-416,350.32 and $849,639.05 respectively.

In filing its returns for 1942 and 1943, Rayon also filed applications for relief under section 722, 26 U.S.C.A. Excess Profits Taxes, § 722. Section 722 provided for the determination in certain circumstances of a constructive average base period net income (CABNI) to be used in place of an average base period net income for the purpose of imposing the excess profits tax. In the case of a taxpayer qualifying for a CABNI under section 722 there usually resulted a lessening of its tax liability.

On February 25, 1946, Rayon filed an application for tentative carryback adjustments from 1945 to the years 1941, 1942, 1943, and 1944. This application was based upon a claimed net operating loss for the year 1945 in the amount of $5,938,372.03 and an unused excess profits credit of $2,260,386.73.

An agreement between Rayon and the Commissioner of Internal Revenue, hereinafter referred to as the Commissioner, acting through the Excess Profits Tax Council, fixed plaintiff's constructive average base period net income for all of the years 1942 through 1945 at $3,-805,862. This agreement between Rayon and the Commissioner was entered into on May 5, 1947. The Council's determination of a CABNI stated on its face that the CABNI was determined "for carry-back and carry-over purposes only." Prior to May 5, 1947, plaintiff had on July 11, 1946, filed a claim for refund of excess profits tax for the year 1942, claiming that it was entitled to a refund of $2,255,358.20 in excess profits tax paid for that year. This claim for refund stated that the grounds for the refund were: (a) excess profits tax relief under section 722 for 1942, (b) an unused excess profits credit adjustment in 1942 resulting from excess profits relief under section 722 for 1943 and 1944, and (c) an unused excess profits credit adjustment in 1942 resulting from a net operating loss incurred in 1945.

The claim for refund referred to an internal revenue agent's report on the tax liability of Rayon for the years 1940 through 1945. Although this report of

---

1. All statutory references are to sections of the Internal Revenue Code of 1939, 26 U.S.C.A., unless otherwise specifically designated.

2. § 710 *"Imposition of tax*
"(a) *Imposition* * * *
"(5) *Deferment of payment in case of abnormality.* If the adjusted excess profits net income (computed without reference to section 722) for the taxable year of a taxpayer which claims on its return, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, the benefits of

section 722, is in excess of 50 per centum of its normal tax net income for such year, computed without the credit provided in section 26(e) [I.R.C.1939] (relating to adjusted excess profits net income), the amount of tax payable at the time prescribed for payment may be reduced by an amount equal to 33 per centum of the amount of the reduction in the tax so claimed. For the purposes of section 271 [I.R.C.1939], if the tax payable is the tax so reduced, the tax reduced shall be considered the amount shown on the return." 26 U.S.C.A. Excess Profits Taxes, § 710(a) (5).

the revenue agent was made prior to the agreement in May 1947 between the parties as to a CABNI for the purposes of section 722, the CABNI used by the revenue agent in his report was the same as later agreed upon and therefore was apparently adopted by both the plaintiff and the Commissioner.

The following adjustments were made to plaintiff's net taxable income, excess profits net income and excess profits credit by the revenue agent's report:

"(a) increases and decreases in the amounts of income and deductions in each of the years 1942–1945, inclusive, called standard adjustments.

"(b) recomputations of excess profits net income and excess profits credits pursuant to section 722 in each of the years 1942–1945, inclusive, using the constructive average base period net income of $3,805,862.

"(c) allowances of net operating loss deductions in 1943 and 1944 arising from a net operating loss incurred in 1945 and carried back under applicable laws; and of unused excess profits credit adjustments in 1942 and 1943, arising in part from net operating loss deductions in other years."

The report showed no excess profits tax liability for any of the years 1942 through 1945, and disclosed an overassessment of excess profits tax for 1942 of $2,255,358.20 and a deficiency in income tax for that year of $1,694,081.27. For 1943, the report showed a net operating loss deduction of $5,870,073.22 resulting from the 1945 loss which was $902,246.-11 in excess of the 1943 net income.

On July 19, 1948 Rayon filed a waiver of restrictions on assessment and collection of the deficiencies in tax and acceptance of overassessment with respect to all of the years 1940 to 1945 inclusive. The report of the revenue agent was subsequently confirmed by the Commissioner and the deficiencies were paid by the plaintiff and the overassessments were credited or refunded by the Commissioner.

On June 3, 1949, plaintiff received the following communication from the Commissioner:

"You are advised that your excess profits tax liability for the taxable years ended December 31, 1943 and 1944 is zero, and the tax assessed has previously been refunded as a result of tentative adjustments.

"In making this determination the bases of your application for relief (Form 991) have not been considered for the reason that other adjustments affecting your excess profits tax result in eliminating all excess profits tax assessed for the taxable years. Accordingly, it has been determined that to the extent your application constitutes a claim for refund, such applications should be rejected. In accordance with the requirements of section 732 of the Internal Revenue Code [26 U.S.C.A. Excess Profits Taxes, § 732], notice is given of the disallowance of the claims for refund asserted in your applications for relief, and in related claims for refund (Form 843), filed December 27, 1944 and May 5, 1947 for 1943, and May 5, 1947 for the year 1944."

After the final determination of Rayon's income and excess profits tax liabilities, the Commissioner computed interest charges and credits pursuant to such determination. It is the amount of interest assessed and collected or credited and refunded for 1942 and 1943 which is now in issue. In order to more clearly illustrate the problems presented, we will take the years 1942 and 1943 separately and determine the issues therein presented.

For the year 1943, after the so-called standard adjustments had been made, but without taking into account any section 722 relief, loss, or unused credit adjustments, and without taking into account the 1943 excess profits tax deferred under section 710(a) (5), the Commissioner determined that there was a deficiency in 1943 excess profits tax in the amount of $762,971.03. In computing

interest charges for 1943, the Commissioner determined that (a) Rayon's entire excess profits tax liability for 1943 was eliminated by the carryback of its net operating loss from 1945, (b) no section 722 relief had been allowed to Rayon for 1943 or 1945 except for carryback purposes and (c) the amount of $762,971.03 constituted a deficiency for the period March 15, 1944 to March 15, 1946 (the due date of the return for the loss carryback year). Since the final determination of the excess profits tax liability for 1943 resulted in an overassessment of the total excess profits tax paid, the $762,971.03 was never assessed as a deficiency, but the Commissioner did assess and collect interest of $91,556.52 computed on the $762,971.03 for the two-year period between March 15, 1944, and March 15, 1946.

In determining the 1943 so-called deficiency, the Commissioner made no allowance for a reduction in 1943 excess profits tax attributable to the use of a 1943 excess profits tax credit in the amount of $3,615,569 or any portion of an unused 1945 excess profits tax credit.

What has in effect happened in regard to 1943, is that the Commissioner has treated as eliminated all excess profits tax due for that year by reason of the 1945 loss carryback, and he has held that plaintiff is liable for interest on the difference between the amount of excess profits tax paid for 1943 and the amount computed for that year without regard to the loss carryback and any credits which would have been due plaintiff had the complete tax liability for 1943 not have been eliminated by the 1945 loss. This necessarily treated as unpaid the taxes deferred under the provisions of section 710(a) (5).

Defendant says that the Commissioner was correct in making the interest charge on this "potential deficiency," see United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302, because there was unpaid excess profits tax in the amount of $762,971.03 for 1943 which was eliminated only by the carrying back of a 1945 net operating loss deduction.

Where there are deficiencies in tax which are later eliminated by a loss carryback deduction, such deficiencies bear interest to the Government during the period from the due date of the return for the year a deficiency exists to the due date of the return for the year in which the loss carryback is claimed, Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346; and Rodgers v. United States, 108 F. Supp. 727, 123 Ct.Cl. 779. In this case the period runs from March 15, 1944, to March 15, 1946.

In taking this position, the defendant must necessarily contend that no section 722 adjustment was ever granted to the plaintiff which would entitle it to the interest provisions of section 292. If section 722 relief had been granted for 1943, then under section 292(b), no interest was chargeable by defendant to the extent that the section 722 relief was not exceeded by the amount of tax deferred under section 710(a) (5). In other words, if the elimination of the tax liability for the amount deferred is due to section 722 relief, the Government is not entitled to collect interest on the eliminated tax liability during the period of deferral, while on the other hand, if the tax liability is eliminated solely by a standard net operating loss carryback, then the Government is entitled to collect interest during the period in which the tax was due and unpaid even though later eliminated. It is therefore the contention of the plaintiff that section 722 relief *was determined and granted by the Commissioner* through the Excess Profits Tax Council and that the stipulation that such relief was for carryback or carryover purposes was without legal effect under the law.

We are unable to agree with the plaintiff as to the effect of a determination of a CABNI. Notice was given by the Commissioner in his June 3, 1949, letter to the plaintiff stating that application for relief under section 722 for 1943 was denied by reason of the elimination of all excess profits tax for that year due to the 1945 loss carryback. The CABNI

determined by the Excess Profits Tax Council stated that it was for carryback and carryover purposes only. At the time that the Council made this determination they were well aware that plaintiff's 1943 excess profits tax had been eliminated by the 1945 loss carryback and in fact plaintiff had made a claim for its use prior to action by the Council. However this may be, we do not feel constrained to hold that plaintiff was not entitled to hold interest free the tax deferred under section 710(a) (5).

■ Section 710(a) (5) was designed to give a taxpayer who was ultimately to be granted section 722 relief the opportunity to retain and use interest free funds representing no more than thirty-three percent of the amount of relief claimed. No interest could be assessed and collected against the deferred taxes so long as the amount deferred did not exceed the amount of tax relief ultimately granted by operation of section 722. In this case a CABNI was determined for the purposes of section 722. It was limited, however, to use for carryback and carryover purposes for the very obvious reason that no section 722 relief was needed to reduce taxes for 1943 because of the standard loss carryback deduction arising from the 1945 net operating loss. At the time that plaintiff filed its 1943 return deferring $849,639.05 in taxes under section 710(a) (5) it certainly was not known or even contemplated that it would sustain a loss in 1945 and we see no reason to deprive plaintiff of the benefit afforded by that section merely because a loss carryback was used to eliminate the 1943 tax rather than section 722 relief. The facts as stipulated by the parties clearly show that had plaintiff not suffered the 1945 loss it would have been entitled to section 722 relief which would have resulted in a reduction of its excess profits tax in an amount equal to or greater than that deferred under section 710(a) (5). Applying the rule that the right to the use of funds carries with it the right to interest thereon, the Government is clearly not entitled to any interest on the deferred funds, E. I.

Du Pont De Nemours & Co. v. United States, Ct.Cl., 147 F.Supp. 486; United States v. Koppers Co., supra.

From March 15, 1944, to March 15, 1946, plaintiff was entitled under the law to the use and enjoyment of the section 710(a) (5) deferred taxes. Justice and the clear terms of the statute require that we hold that even though an attempt was made to limit the section 722 relief granted to plaintiff to carryback and carryover purposes such relief, to which plaintiff had shown itself entitled, was sufficient to enable plaintiff to come within the orbit of relief from interest provided by section 710(a) (5).

■ We therefore hold that no interest was due to defendant on the $762,-971.03 so-called "potential deficiency" during the period March 15, 1944, to March 15, 1946.

For the year 1942, as previously stated, the Commissioner determined an overassessment of excess profits tax of $2,-255,358.20 and a deficiency in income tax for that year in the amount of $1,694,081.27. Of the total income tax deficiency of $1,694,081.27, the amount of $694,887.50 was attributable to the allowance of section 722 relief for the year 1942 alone, and of the total overassessment of excess profits tax of $2,-255,358.20, only $157,083.89 was attributable to such relief by reason of the 1942 deferment of taxes under section 710(a) (5).

In computing interest charges for 1942, the Commissioner determined that (a) the only refund or credit of 1942 excess profits tax arising from the operation of section 722 was the said $157,-083.86, (b) the deficiency under Chapter 1 (income tax) of the Code arising from the same cause in the amount of $694,-887.50 exceeded such refund or credit by $537,803.64, and (c) interest should be assessed on such excess under the second exclusion in section 292(b) from March 15, 1943 to August 18, 1948 (a date thirty days after plaintiff executed a waiver which has been heretofore referred to). Accordingly the Commissioner assessed

interest of $175,051.40 on such amount for that period.

■ In making his determination that $537,803.64 constituted a deficiency for the period commencing March 15, 1943, on which interest could be charged, the Commissioner made no allowance for the reduction of the 1942 excess profits tax attributable to the use as an unused excess profits credit carryback of any portion of a 1944 excess profits credit of $4,086,185.

The problem comes down to this: Where a taxpayer has filed claim for relief under section 722 and deferred taxes under section 710(a) (5), can the Commissioner in determining interest on the so-called potential deficiency take into consideration only relief granted under section 722 for the year in which a potential deficiency exists, or must he also take into consideration credits which come into existence in later years and offset the previous deficiency?

Section 292(b) provides in pertinent part:

"\* \* \* If any part of a deficiency for a taxable year beginning after December 31, 1941, is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year (excluding any portion of a deficiency of excess profits taxes constituting a deficiency by reason of deferment of tax under section 710(a) (5), and excluding, in case the taxpayer has availed itself of the benefits of section 710 (a) (5), such portion of a deficiency under Chapter 1 as may be determined by the Commissioner to exceed any refund or credit of excess profits tax arising from the operation of section 722), no interest shall be assessed or paid with respect to such part of the deficiency for any period prior to one year after the filing of such application, or September 16, 1945, whichever is the later. \* \* \* "

Under the second exclusion of the above quoted section, since plaintiff de- ferred taxes under section 710(a) (5), and since the deficiency in income tax attributable to section 722 relief for 1942 exceeded the overassessment of excess profits tax attributable to the same relief, interest was assessed on this difference from the due date of the 1942 return to a date thirty days after the execution of a waiver. Plaintiff contends that interest should be charged only from June 11, 1946, to August 18, 1948. June 11, 1946, is a date one year after the filing of an application for section 722 relief for the year 1944. It is an unused excess profits tax credit from 1944 which plaintiff seeks to use to offset the 1942 income tax deficiency. Although the Commissioner allowed the unused credit to eliminate the tax, he refused to abate the interest charges on the ground that since section 722 relief for 1942 alone resulted in an income tax deficiency exceeding an excess profits tax overassessment, the Government is entitled under the exclusion contained in section 292(b) to interest on this amount.

We are of the opinion that the Commissioner in this respect is correct. The court has held several times, as we indicated in the first part of this opinion, that the Government is entitled to interest from the due date of the return on that part of an amount deferred under section 710(a) (5) which exceeds the section 722 relief finally granted. We think that this principle should be applied in the present situation. Where a taxpayer has deferred under section 710 (a) (5) an amount of tax which, without the benefit of section 722, would be due, we think that only the facts present for that year alone should be used in determining whether or not section 722 relief results in a deficiency in income tax which exceeds an overassessment of excess profits tax.

In other words, at the time a taxpayer defers tax under section 710(a) (5) and files an application for relief under section 722, such application should be the basis for the determination of deficiencies and overassessments. To allow a taxpayer who in later years suddenly

finds itself with an unused credit, to use this credit to defeat legitimate interest charges is, in our opinion, an unjustified result. We therefore hold that the Commissioner was correct in assessing interest on the difference between the income tax deficiency and the excess profits tax overassessment, both of which resulted from section 722 relief for the year 1942 alone.

The final question to be resolved also involves interest on the overassessment of 1942 excess profits tax.

On May 14, 1943, plaintiff filed its 1942 returns and attached an application for section 722 relief. This application naturally contained no mention of any carryback credits from succeeding years. On May 12, 1944, and June 11, 1945, Rayon filed applications for section 722 relief for 1943 and 1944, respectively. These applications set forth claimed amounts of excess profits net income and of excess profits credit for each of the years 1942–1944, inclusive, as follows:

|  | E. P. Net Income | E. P. Credit |
|---|---|---|
| 1942 | $6,650,588.00 | $5,791,533.00 |
| 1943 | $4,727,245.71 | $5,791,532.50 |
| 1944 | $3,599,576.19 | $5,791,532.50 |

On July 11, 1946, plaintiff filed a formal claim for refund of 1942 excess profits tax not theretofore credited or refunded. This claim expressly requested refund on the grounds that plaintiff was entitled to section 722 relief for 1942 and also to carryback credits to 1942 from unused 1943 and 1944 excess profits credits.

After determining that plaintiff was entitled to a refund of all its 1942 excess profits tax, the Commissioner determined that $1,988,247.73 of the reduction in 1942 excess profits tax was attributable to the carryback to 1942 of the unused 1943 and 1944 excess profits credits. The Commissioner allowed plaintiff a credit for interest computed on this portion of the overassessment commencing with July 11, 1947, a date one year after the filing by Rayon of its claim for refund of 1942 excess profits tax. The Commissioner as heretofore stated, determined a deficiency in income tax for 1942 in the amount of $1,694,081.27. Of this total deficiency for 1942 income taxes it was determined that $981,850.73 was attributable to the 1943 and 1944 carryback. The Commissioner assessed and collected interest on this income tax deficiency from the same date he commenced to allow interest on the excess profits tax overassessment, i. e., July 11, 1947.

It is the position of plaintiff that interest should have been allowed on the overassessment resulting from the carrybacks from July 11, 1946, rather than a date one year later. Plaintiff admits that if this position is adopted by the court, the defendant is entitled to offset any such recovery by an amount equal to the interest which would have been due defendant on the income tax deficiency resulting from the same carryback adjustment for the same period of time.

The statute governing the allowance of interest in a case such as herein presented is found at section 3771 of the Internal Revenue Code. Subsections (a) and (b) of section 3771 provide the general rule that interest runs from the date of overpayment while subsections (e) and (g) deal with the limitations on this general rule. Subsections (e) and (g) provide:

"(e) *Claims based on carry-back of loss or credit.* If the Commissioner determines that any part of an overpayment is attributable to the inclusion in computing the net operating loss deduction for the taxable year of any part of the net operating loss for a succeeding taxable year or to the inclusion in computing the unused excess profits credit adjustment for the taxable year of any part of the unused excess profits credit for a succeeding taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period before the filing of a claim for credit or refund of such part of the overpayment or the filing of a petition with the Tax Court, whichever is earlier; nor for any period beginning with the date of filing of an

application under section 3780(a) relating to such part of the overpayment and ending with the last date the Commissioner's determination is required to be made under section 3780(b); nor, in the case an application is made under section 3780(a), for any period before the first day of the month immediately following the month in which falls the last date prescribed by law (including any extension of time granted the taxpayer) for filing the return for the taxable year of the net operating loss or unused excess profits credit, or before the date on which the return is filed, whichever is later."

"(g) *Claims based upon relief under section 722.* If any part of an overpayment for a taxable year beginning prior to January 1, 1942, is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year, no interest shall be allowed or paid with respect to such part of the overpayment. If any part of an overpayment for a taxable year beginning after December 31, 1941, is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period prior to one year after the filing of such application, or September 16, 1945, whichever is the later."

Plaintiff argues that the filing of an application for section 722 relief for 1943 and 1944 showing an unused excess profits tax credit satisfies subsection (g), and since its claim for refund based on the carryback of these credits to 1942 was filed more than one year after the filing of the section 722 applications, and also after September 16, 1945, it is entitled under subsection (e) to interest on the resulting overassessment from the date of the filing of its claim for refund.

Defendant, on the other hand, contends that the claim filed on July 11, 1946, was the application for section 722 relief which is referred to in subsection (g) and therefore no interest was due until one year later, or July 11, 1947 (date on which defendant actually did commence to pay interest on the overassessment). Defendant takes this position because the section 722 applications did not specifically ask that the unused credits be carried back to 1942 nor was there any amended application making such a request filed with respect to the year 1942. The first specific request for the section 722 credit carrybacks to 1942 was made in the 1946 claim for refund.

■ Subsections (e) and (g) of section 3771 are not mutually exclusive, but must be read together, see S.Rept.No. 508, 78th Cong., 1st Sess., pp. 2–3. Therefore with respect to the use of carrybacks resulting from section 722 relief, interest becomes payable only when two things are accomplished, (1) an application for section 722 relief or benefit must be filed and (2) a claim for refund must be made with respect to the carryback year claiming the overassessment due by reason of the carryback credits.

■ We think that plaintiff failed to meet the requirements of 3771(g) with respect to applying for a section 722 benefit until it made its claim for refund on July 11, 1946. A carryback of an unused excess profits tax credit is a benefit arising under section 722 and we think that section 3771(g) contemplates a taxpayer filing an application for their use specifically designating the credit carrybacks and how they are to be applied. This enables the Commissioner to investigate and determine their correctness prior to the time that he is charged with interest. Reg. 112, Section 35.722–5 requires a taxpayer to file an application for a section 722 carryback "for the taxable year to which such unused excess profits credit carryover or carryback is to be applied," Lockhart Creamery Co. v. Commissioner, 17 T.C. 1123. We think that such a requirement is inherent in section 3771(g) with re-

spect to the running of interest. Plaintiff's applications for 1943 and 1944 do not, in our opinion, meet the requirements of the statute. The Commissioner was therefore correct in treating the July 11, 1946, claim for refund as the application for a section 722 benefit with respect to carryback credits to 1942. Under the express mandate of section 3771(g) interest could not begin to run on the overassessment resulting from the use of the carrybacks until one year later and since the Commissioner complied with this requirement plaintiff has no claim with respect to this issue.

Plaintiff is entitled to recover, together with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.