**UNIVERSAL PICTURES COMPANY, Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
April 30, 1964.

Adolph Schimel, New York City, for plaintiff. Gardner, Morrison & Rogers, Washington, D. C., of counsel, by Thomas J. Beddow, Meade C. Patrick, Washington, D. C.

Robert M. Morgenthau, U. S. Atty., S. Dist. of New York for the United States. Robert Arum, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

The plaintiff-taxpayer, Universal Pictures Company, Inc., seeks by this tax refund action to recover what it alleges to be overpayments of interest on income and excess profits tax payments made by it for its fiscal years ended October 31, 1944 and 1945.[1]

For the year 1944, the Commissioner assessed interest in taxpayer's favor pursuant to Section 3771(g) [2] from January 31, 1951 on a component excess profits tax overassessment resulting in part from the carryback to 1944 from 1946 of an unused excess profits credit due to the granting of taxpayer's prior application under Section 722. The taxpayer contends that interest should have been allowed from April 28, 1948, one year after it filed its Section 722 application or, in the alternative, from January 13, 1950, the date of filing its carryback claim. Under its first theory, the taxpayer seeks to recover an overpayment of $148,801.35 together with interest thereon from May 15, 1957, the date the component excess profits tax overassessment was credited against the excess profits tax liability for 1944 and the resultant deficiency paid. Under its alternative theory, the taxpayer seeks a refund of $54,717.57 with interest thereon from May 15, 1957. Should the court find that interest was properly assessed from January 13, 1951, the taxpayer claims, in the alternative, that it was entitled to recover interest on the portion of a payment made by it on December 7, 1949, which was applied by the Commissioner in satisfaction of the component income tax deficiency resulting from the carryback of the unused excess profits credit. Simply stated, the taxpayer claims under this theory that, having paid before the date from which interest could have been assessed against it, the government should respond in interest for the period it held the money before it was due.

For 1945, the taxpayer claims interest with respect to an income tax payment for 1945 under a theory identical to its "use of money" theory advanced for the year 1944. Originally, in filing its refund claim for 1945, the taxpayer also contended that the Commissioner failed to credit it with an interest payment of $20,745.42 made with respect to its excess profits tax liability for that year. The taxpayer, in its brief, now expressly concedes that it did in fact receive credit for the payment and this issue is no longer in controversy.

Both the taxpayer and the government have now moved for summary judgment. The facts are not disputed and the case is in all respects ripe for summary judgment.

I.

Simultaneous with the filing of its 1944 excess profits tax return, Universal filed an application for relief under Section 722 seeking to establish a constructive average base period net income (CABPNI) for use in calculating its excess profits tax liability for that year.[3] On its return, it elected pursuant to Section 710(a) (5) to defer payment of a portion of its excess profits tax liability pending the outcome of its Section 722 application.

On April 24, 1947, Universal filed its excess profits tax return for 1946, utilizing in its computations an excess profits credit of $1,977,837.[4] Again, it chose to

---

1. Each fiscal year referred to in this opinion will be designated simply by the calendar year in which it ended.

2. All statutory references are to sections of the Internal Revenue Code of 1939 unless otherwise indicated.

3. For those uninitiated in the intricacies of the World War II excess profits tax and its interrelationship with the normal income tax for the years 1944 and 1945, reference is made to Time, Inc. v. United States, 226 F.Supp. 680, 681 (S.D.N.Y. 1964).

4. All amounts are shown to the nearest dollar.

defer the payment of a portion of its excess profits tax liability for that year and simultaneous with its return, filed a Section 722 application for 1946.

On April 13, 1949, Universal filed a claim for refund of the excess profits taxes it paid for 1946 based on the carryback from 1948 to 1946 of a net operating loss which had the effect of eliminating all of its income subject to the excess profits tax for the year 1946. At the same time it filed a claim for refund of the excess profits tax it paid for 1944 in the amount of $893,272 based on a claimed carryback of an unused excess profits tax credit for 1946 arising from the carryback of the net operating loss from 1948 to 1946.

On December 7, 1949, Universal made an aggregate payment of $3,669,536 to the Collector of Internal Revenue which, at Universal's request, was applied against deficiencies in income and excess profits taxes for various years including 1944 and 1945. The following day Universal filed amended income tax returns for both 1944 and 1945, reporting additional deficiencies.

In January 1950, the Excess Profits Tax Council approved Universal's Section 722 applications for 1943 through 1946 and determined that for 1944 and 1946 Universal was entitled to a CABPNI of $2,685,000.

On January 13, 1950, Universal filed a further claim for refund of the excess profits taxes it paid for 1944 based on the carryback from 1946 to 1944 of an unused excess profits credit resulting from the granting of its Section 722 application. This carryback resulted for 1944 in a component excess profits tax overassessment of $911,959 and in a concommitant component income tax deficiency of $387,381. On the same date, Universal filed a claim for refund of the excess profits tax it paid for 1945 based on the carryback from 1947 to 1945 of an unused excess profits credit resulting from the operation of Section 722.

The Commissioner, at Universal's direction, applied $774,762 of Universal's December 7, 1949 payment in equal parts to eliminate the income tax deficiency resulting from Universal's successful Section 722 application for the year 1944 and the income tax deficiency occasioned by the granting of Universal's January 13, 1950 carryback application. On the December 7, 1949 payment, the sum of $452,121 was credited against the component income tax deficiency of $387,381 arising from the grant, in part, of Universal's Section 722 application for 1945 and to the extent of $64,740 against the net additional income tax deficiency for fiscal year 1945 as shown on the amended return. The component income tax deficiency which resulted from the grant, in part of Universal's carryback of an unused Section 722 excess profits credit from 1947 to 1945, amounted to $86,962.

When all was said and done, there remained an excess profits tax deficiency for 1944 and both an excess profits tax and income tax deficiency for 1945. These amounts together with interest were paid by Universal on May 15, 1957. Universal preserved its right to recover the amounts here challenged by the timely filing of claims for refund and the bringing of this action.

## II.

█ Universal maintains that the interest on its 1944 component excess profits tax overassessment of $911,959 arising from the carryback of an unused Section 722 excess profits credit from 1946 should have commenced on (a) April 24, 1948—one year after the filing of its Section 722 application for 1946, or (b), in the alternative, on January 13, 1950, the date it filed its application to carry back the unused excess profits credit. The Commissioner, relying upon Section 3771(g), assessed interest in Universal's favor from January 13, 1951, one year from the filing of Universal's application to carry back its 1946 unused excess profits credit. The dispute as to the commencement date of the interest presents the first issue in this case.

### A. Section 3771(g)

The taxpayer first contends that its application for Section 722 relief for the

year 1946, filed April 24, 1947, was, within the intendment of Section 3771(g), the application to which is attributable its 1944 overpayment. Interest, it argues, should commence one year from the filing of its 1946 Section 722 application.

The enactment of Section 3771(g) was a Congressional response to its realization that the customary interest provisions requiring interest to be paid from the date of overpayment, Section 3771 (a), (b), and assessed from the due date of the tax, Section 292(a), were unsuited for the overpayments and deficiencies arising from Section 722. Section 3771 (g) and its corollary section, 292(b), were designed to govern the assessment of interest on both deficiencies and overpayments arising from the operation of Section 722.

Section 3771(g) provides in pertinent part:

" * * * If any part of an overpayment for a taxable year beginning after December 31, 1941, is determined by the Commissioner to be attributable to: the final determination of an application for relief or benefit under section 722 for any taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period prior to one year after the filing of such application, or September 16, 1945, whichever is the later. * * * "

Simply stated, the taxpayer's argument is that the statutory phrase, "attributable to the final determination of an application for relief or benefit under section 722 for any taxable year," contemplates in this factual setting the April 24, 1947 Section 722 application and not the January 13, 1950 carryback application. Any analysis of these contentions must begin with the provisions of Treas.Reg. 112, § 35.722–5(a) which specifically provided that the taxpayer in order to obtain the benefit of any unused Section 722 excess profits credit "should file an application * * * or an amendment to such application if already filed for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied." It has been consistently held that where the taxpayer has an unused excess profits credit but fails to file a timely application to carry back or carry forward the credit, the taxpayer is not entitled to its benefit. Headline Publications, Inc. v. Commissioner, 263 F.2d 541 (2d Cir. 1959); Utility Appliance Corp. v. Commissioner, 256 F.2d 39 (9th Cir. 1958); May Seed & Nursery Co. v. Commissioner, 242 F.2d 151, 153 (8th Cir.), cert. denied 355 U.S. 839, 78 S.Ct. 62, 2 L.Ed. 2d 51 (1957); cf. Dale Distributing Co. v. Commissioner, 269 F.2d 444, 445–446 (2d Cir. 1959).

In the face of these authorities it seems clear that Universal's Section 722 application for its tax year 1946, filed April 24, 1957, did not constitute an application for relief for the year 1944. To hold that the Section 722 application for the year 1946 required the Commissioner to pay interest one year thereafter when his attention was not drawn to the unused excess profits credit until almost three years later would require a prescience even beyond that normally attributed to the office of the Commissioner of Internal Revenue. "[T]here would not seem to be any general unreasonableness in an administrative requirement by the Commissioner that, in the complexities involved in his dealing with an application for section 722 relief as to a particular year and a determining of the amount of taxes due for the year on the basis of any such granted relief, his notice should be specifically challenged to the fact that a carry-over or carry-back credit is to be taken into account by him, through the assertion of a claim for the benefit of such carry-over or carry-back credit in the application which the taxpayer has filed or an amendment made thereto." May Seed and Nursery Co. v. Commissioner, supra, 242 F.2d at 153.

It was unquestionably these reasons which prompted the Court of Claims in Industrial Rayon Corp. v. United States,

155 F.Supp. 556, 564, 140 Ct.Cl. 168 (1957) to hold:

> "A carryback of an unused excess profits tax credit is a benefit arising under section 722 and we think that section 3771(g) contemplates a taxpayer filing an application for their use specifically designating the credit carrybacks and how they are applied. This enables the Commissioner to investigate and determine their correctness prior to the time that he is charged with interest. * * * We think that such a requirement is inherent in section 3771(g) with respect to the running of interest."

The overpayment for the tax year 1944 was attributable to the claim for refund filed January 13, 1950 within the intendment of Section 3771(g) and the Commissioner was correct in assessing interest in Universal's favor one year from the date, to wit, January 13, 1951.

### B. *Section 3771(e)*

Alternatively, the taxpayer claims that interest should run from January 13, 1950, the filing date of its claim for refund under the provision of Section 3771(e). Simply stated, subsection (e) provides, as far as herein material, that no interest may be allowed or paid on any part of an overpayment attributable to a net operating loss carryback or to an unused excess profits credit carryback for any period prior to the filing of a claim for credit or refund of such part of the overpayment. Subsection (e) provides the general rule for the payment of interest on overpayments resulting from carrybacks including the carryback of an unused excess profits credit. Subsection (g) provides a special rule for the payment of interest on overpayments resulting from excess-profits-tax relief under Section 722. The Report of the Senate Finance Committee, S.Rep.No. 508, 78th Cong. 1st Sess. 2 concerning what was to become subsection (g) makes clear that the subsection was to apply to carryovers and carrybacks and went on to provide

its view as to how the "no interest" rule applicable for the years 1940 and 1941 or the "interest" rule for 1942 and subsequent years was to be applied to carryovers or carrybacks. It went on to provide:

> " * * * The bill does not supersede section 3771(e) of the Code (relating to the period for interest on carry-backs) and its provisions as well as those of the bill may be applicable. In the case of carrybacks, the bill does not allow interest to begin in any case earlier than is provided in section 3771(e), but in certain cases provides for a later date than in that section." [5]

The taxpayer argues that the quoted portion of the Senate Report obviously indicates that a claim for refund seeking to carry back an unused Section 722 excess profits credit must be treated under the provisions of subsection (e) rather than (g), for otherwise the interrelationship between the two subsections would always make the subsection (g) date the later. The answer to this is given by an example furnished by government counsel. Assume a corporation files for the years 1944 and 1946 both its excess profits tax return and an application for Section 722 relief. Subsequently, a claim for refund is filed seeking to carry back the unused excess profits credit resulting from the grant of Section 722 relief. Thereafter, for the tax year 1948 the corporation suffers a net operating loss of an amount equal to its 1946 income subject to the excess profits tax and files a claim for refund seeking to carry back the loss to 1946 and any unused excess profits credit for 1946 to 1944. Interest on the overpayment resulting from the carryback to 1944 would run from the date of the claim for refund pursuant to Section 3771(e), rather than one year from the date of the application to carry back any unused Section 722 credit. While both subsections (e) and (g) are applicable to this example, subsection (e) would provide the later date for the run-

---

5. The other pertinent portions of the report are quoted in full in Time, Inc. v. United States, 226 F.Supp. 680, 686 (S.D.N.Y.1964).

ning of interest in full accord with the Senate Report that subsection (g) can never allow interest to begin prior to the date prescribed by subsection (e).

The Commissioner was accordingly correct in determining that the filing of January 13, 1950 made subsection (g) rather than subsection (e) applicable. See Industrial Rayon Corp. v. United States, 155 F.Supp. 556, 140 Ct.Cl. 168, (1957).

Lastly, the taxpayer urges that its filing on April 27, 1947, seeking Section 722 relief for the year 1946, should be treated as a claim for refund under subsection (e) pursuant to the rationale of Pearl Assur. Co. v. United States, 324 F.2d 512 (Ct.Cl.1963). Briefly, the Pearl Assurance case involved a situation where the taxpayer filed a claim for refund of 1943 income taxes based on a loss carryback from both 1944 and 1945. Later, the taxpayer sought refund of 1942 income taxes based on its 1944 loss carryback. The Court of Claims held that a 1952 refund claim for 1942 was not time barred since the Commissioner should have realized that the 1944 loss could be carried back to 1942. "Thus when the Commissioner received a claim for a carry-back to the first preceding taxable year (1943), it was accordingly his first duty to check the return for the second preceding taxable year (1942), particularly since a refund claim had been filed for that year, to determine whether there was any amount remaining over the net income of that year which would be applied to the first. We think that this would specifically advise the Collector of plaintiff's claim for a carry-back for the year 1942. * * *" Pearl Assur. Co. v. United States, 324 F.2d at 514–515.

It is untenable to apply a similar reasoning to the factual context of this case, especially when one realizes the convoluted and intricate computations necessary in arriving, first, at the constructive average base period net income and then determine whether, based on the CABPNI, there is an unused excess profits credit available to a preceding year or years. "A contrary ruling would doubtless have encouraged circumvention of the specificity requirements designed to give the Commissioner timely notice of the taxpayer's claims in this complicated field." Headline Publications, Inc. v. Commissioner, 263 F.2d 541, 543 (2d Cir. 1959).

Accordingly, subsection (e) is inapplicable and the Commissioner was correct in determining that subsection (g) was to govern the assessment of interest in Universal's favor.

### III.

In briefest compass, the facts relating to Universal's claim for interest on the payment of its 1944 income tax deficiency are as follows: As a result of the application filed January 13, 1950, the taxpayer was permitted to carry back an unused excess profits credit. On the carryback this resulted in an income tax deficiency for 1944 which the Commissioner deemed paid by Universal's December 7, 1949 voluntary payment. Arguing that since under Section 292(b) interest could not have been assessed against Universal on the income tax deficiency until January 13, 1951, a year from the filing of the carryback application, it should be permitted to offset the interest allegedly due it on the prepayment of the income tax deficiency against the interest it was required to pay on the excess profits tax deficiency for the same year. The basis of the taxpayer's claim is that it was required to pay to the government a not insubstantial amount of interest for 1944 on deficiencies which were subsequently abated under the authority of Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950) and United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955). Characterizing these decisions as based on the equitable "use of money" doctrine, Universal contends that the government, invoking equity, should do equity and permit as an offset interest on the income tax prepayment. Save for the amount involved, the interest claim on the prepayment of Universal's 1945

income tax deficiency is identical to the claim for 1944 and both will be disposed of together.

The taxpayer's initial error is to characterize the Seeley Tube and Koppers cases as based on the equitable principle of "use of money." Both Seeley Tube and Koppers are known among tax savants as "potential deficiency" cases. Briefly, they held that where a deficiency is later abated by either a loss carryback (Seeley Tube) or the granting of Section 722 relief (Koppers), the deficiencies will nevertheless bear interest until extinguished or abated. In each the court reasoned that since Congress deemed the tax due at the time of the assessment, the government was entitled to the use of the funds until abatement and the taxpayer must compensate the government for the "use of the money." "[T]he taxpayer had a positive obligation to the United States: a duty to pay its tax. * * * For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States." Seeley, supra, 338 U.S. at 565–566, 70 S.Ct. at 389. Each opinion extensively analyzes the statutory scheme and the applicable portions of the statute. To characterize these holdings as based on equitable doctrines is at best misdescriptive. These opinions, while requiring interest to be paid *to* the government can in no wise support the taxpayer's claim for interest *against* the government.

■ Any discussion of the allowance of interest to Universal in this factual context must begin with the citation of the " 'traditional rule' that interest on claims against the United States cannot be recovered in the absence of an express provision to the contrary in the

relevant statute or contract." United States v. Alcea Band of Tillamooks, 341 U.S. 48, 49, 71 S.Ct. 552, 95 L.Ed. 738 (1951). There is here no statute or contract permitting the granting of interest [6] and no contrary result is dictated by either the Seeley Tube or Koppers case. The fact that the government is entitled to interest and the taxpayer is not, is, of course, not determinative, for, as Justice Brandeis observed in United States v. North American Transp. & Trading Co., 253 U.S. 330, 336, 40 S.Ct. 518, 521, 64 L.Ed. 935 (1920): "So rigorously is the rule applied that, in the adjustment of mutual claims between an individual and the government, the latter has been held entitled to interest on its credits although relieved from the payment of interest on the charges against it." See also Holmes, J., in Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 49, 49 S.Ct. 52, 73 L.Ed. 170 (1928).

The case of Industrial Rayon Corp. v. United States, 155 F.Supp. 556, 140 Ct. Cl. 168 (1957) fails in any way to support the taxpayer's contentions here. The court simply held that under the facts present there the taxpayer was entitled to hold interest-free the sum it deferred under Section 710(a) (5), even though the deficiencies were later stipulated to have been abated by a loss carryback rather than by a subsequently granted Section 722 application.

■ Universal was not entitled to be credited with any interest for the period of the prepayment of its 1944 and 1945 income tax deficiencies and accordingly is not entitled to any refund.

The government's motion for summary judgment is granted with costs and the plaintiff's cross-motion is denied.

Settle judgment on notice.

6. No claim is made that this payment was an overpayment within the intendment of Section 3771(a). The mere fact that monies are paid to the Collector prior to their due date does not make them overpayments and require the payment of interest. Cf. Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1944); Moskowitz v. United States, 285 F.2d 451 (Ct.Cl.1961).