**UNIVERSAL PICTURES COMPANY, Inc., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 144, Docket 29105.**

United States Court of Appeals Second Circuit.

Argued Dec. 11, 1964.

Decided May 19, 1965.

Meade C. Patrick, Washington, D. C. (Gardner, Morrison & Rogers, Washington, D. C., on the brief, Adolph Schimel, New York City, of counsel), for plaintiff-appellant.

Arthur S. Olick, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, on the brief, Laurence Vogel, Asst. U. S. Atty., Harry Marselli, Atty., Dept. of Justice, of counsel), for defendant-appellee.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge:

These cases raise abstruse questions as to the intricacies of interest, if any, payable under the Excess Profits Tax of World War II and the corporate income tax, all under the Internal Revenue Code of 1939. Perhaps the outlines of this tax structure should be described in brief

compass to make the facts more meaningful.

In the tax years in question, the *excess profits tax* (EPT) was computed by applying the high EPT rate to adjusted excess profits net income (AEPNI). This item in substance equalled normal tax net income (NTNI) less the excess profits credit (EPC). If EPC exceeded NTNI (either initially or after redetermination of EPC), an unused excess profits credit (UEPC) resulted. The UEPC from prior or subsequent years, carried forward or back, could also be deducted from NTNI in computing AEPNI. The *income tax* (IT) was found by applying the lower income tax rate to NTNI less AEPNI. Thus, in simple algebraic terms:

$$EPT = EPT \text{ Rate } (NTNI - EPC - UEPC)$$
$$IT = IT \text{ Rate } (EPC + UEPC)$$

All very easy so far—comparatively.

Therefore, if after the respective taxes were paid, there was an increase in EPC or UEPC, there would automatically be an overpayment of EPT and a deficiency in IT. Since the EPT rate was considerably higher than the IT rate, the net result, if the originally estimated EPT and IT had been paid in full, would always be some net overpayment. The converse would be true if EPC or UEPC were subsequently reduced.

EPC would initially be computed on the basis of an average base period net income (ABPNI) during 1936–39. However, if that figure caused inequitable adnormalities due to special circumstances during the base period, the taxpayer could, pursuant to § 722, file an application for relief under § 322. In brief, that meant that EPC could be computed on the basis of a higher constructive average base period net income (CABPNI) upon approval or modification (after some years of consideration) by the Excess Profits Tax Council. Although a wide range of time was allowed for filing a § 722 application, it often was filed, as here, simultaneously with the filing of the regular EPT return. The resulting redetermination of EPC, like the carryover or carryback of UEPC, meant that the ultimate deficiencies or overpayments would not be known when the tax was due or initially paid.

Because a § 722 application would tend to lead to a lower EPT, Congress provided in § 710(a) (5) for partial deferment of EPT. Thus, if a § 722 application had been filed and if AEPNI (without reference to § 722) exceeded 50% of NTNI, taxpayer could defer payment of ⅓ of the claimed *reduction* in tax due. With this deferred payment and with an eventual increase in EPC or UEPC it would be possible for the resulting IT deficiency to exceed the resulting actual overpayment. Briefly, then, overpayments could result from three relevant sources: (1) approval of a CABPNI for the tax year resulting in a higher EPC; (2) carryover or carryback of loss from different years resulting in a lower NTNI; or (3) a carryover or carryback of UEPC. The last could itself result from three relevant sources: (i) an initial excess of EPC over NTNI on a different year; (ii) carryover or carryback of loss resulting in a lower NTNI for a different year; or (iii) approval of a CABPNI for a different year leading to a higher EPC for that year.

The various time lags and redeterminations created possible interest problems. As to interest on deficiencies resulting from § 722 relief, § 292(b) provided that:

> "If any part of a deficiency for a taxable year * * * is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year * * * no interest shall be assessed or paid with respect to such part of the deficiency for any period prior to one year after the filing of such application * * *."

As to interest on overpayments resulting from § 722 relief, § 3771(g), added at the same time, provided that:

> " * * * If any part of an overpayment * * * is determined by the Commissioner to be attributable to the final determination of an *ap-*

*plication for relief or benefit under section 722 for any taxable year,* no interest shall be allowed or paid with respect to such part of the overpayment for any period prior to one year after the filing of *such application.* \* \* \*." (Emphasis added.)

Section 3771(g) supplemented, without superseding, a pre-existing, more general provision in § 3771(e) for claims based on carrybacks of loss or credit, that:

"If the Commissioner determines that any part of an overpayment is attributable to the inclusion in computing the net operating loss deduction for the taxable year of any part of the net operating loss for a succeeding taxable year or to the inclusion in computing the unused excess profits credit adjustment for the taxable year of any part of the unused excess profits credit for a succeeding taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period before the filing of a *claim for credit or refund of such part of the overpayment* \* \* \*." (Emphasis added.)

Turning to the facts, in 1945 taxpayer filed with its 1944 EPT return a § 722 application for relief with respect to 1944; it also chose to defer payment of $2,200,000 of EPT under § 710. On April 24, 1947, taxpayer filed with its 1946 EPC return an application for § 722 relief with respect to 1946; it again chose to defer payment of part of the EPT due. On April 13, 1949, taxpayer filed a claim for refund of its 1946 EPT due to a net operating loss carryback from 1948. At the same time taxpayer filed a claim with reference to 1944 EPT based on a carryback of UEPC from 1946 which resulted from the carryback of loss from 1948. No reference was made in this claim, as it presumably could have been, to any additional UEPC for 1946 resulting from § 722 relief for 1946. Then on January 13, 1950, taxpayer filed another claim for refund for 1944 EPT due to carryback from 1946 of the UEPC created by § 722 for that year. Also, in January 1950 the

Excess Profits Tax Council approved in part taxpayer's claim for § 722 relief with respect to 1943–46 by determining the appropriate CABPNI—a figure lower than the CABPNI estimated by taxpayer. The carryback to 1944 of the UEPC caused by 1946 § 722 relief resulted in a component EPT overassessment of $910,000 and a component IT deficiency of $380,000.

Taxpayer claims that under § 3771(g) interest on the overassessment should run from one year after filing of the first § 722 application for 1946, i. e., April 24, 1948; at the very least, taxpayer claims, under § 3771(e) interest should run from January 13, 1950, when the last claim for refund for 1944 was filed. Interest due would be about $150,000 under the former choice and about $55,000 under the latter.

However, the Commissioner determined that the overpayment was attributable to the 1950 filing which was considered an application for § 722 relief under § 3771(g). Consequently, he allowed interest to the taxpayer on the overassessment and charged interest against the taxpayer on the deficiency from January 13, 1951, one year from the 1950 filing.

A further twist was added by taxpayer's voluntary payment on December 7, 1949, of $3,670,000 to be applied against various past deficiencies in IT and EPT. $775,000 was to be applied against the 1944 IT deficiency, that being the additional amount shown due in an amended return filed the next day. Of that amount one-half was applied to the component IT deficiency arising from the grant of § 722 relief for 1944 and one-half was to be applied against any additional component deficiency arising from the grant of the carryback sought in the 1950 application. In fact, the eventual additional deficiency was exactly that amount and was deemed satisfied by that payment. Although the deficient tax would have been formally due in 1944, no interest would have run against taxpayer on the deficiency until one year from the 1950 filing. Because of this, taxpayer contends that, even apart from the statute, it is entitled to interest on the amount

of the IT deficiency paid at a time when interest could not have run the other way. Again, the Commissioner disagreed and allowed no interest for this period. Taxpayer brought this action to recover interest. Judge Levet granted the Government's motion for summary judgment. 237 F.Supp. 169 (S.D.N.Y.1964).

■ It is clear that § 3771(e) governs interest on overpayments resulting from a claim for refund (such as taxpayer filed in 1949) based only on carryback of loss, or carryback of UEPC, due to any excess of EPC over NTNI not involving a § 722 determination. Thus, it applies to the "standard" carrybacks.

It is equally clear that § 3771(g) governs interest on overpayments resulting solely from the granting of an application (such as taxpayer filed in 1945 for 1944, and in 1947 for 1946) for § 722 relief. But the only § 722 application that, without more, could cause an overpayment in a particular taxable year is the § 722 application for that taxable year. For any other year's § 722 application to have that effect, a claim for refund and carryback or carryforward had to be filed. The crucial question, then, is whether a claim seeking to carryback UEPC caused by § 722 relief for a subsequent year is to be assimilated to a claim under § 3771(e) or (g).

Looking first to the text, nothing in § 3771(e) purports to distinguish between claims for carryback of UEPC resulting from subsequent § 722 relief and those resulting from other sources. On the other hand, § 3771(g) clearly contemplates overpayments resulting from § 722 relief in years other than the taxable year, thereby implicitly requiring a carryback or carryforward claim to be made.

Taxpayer claims that the legislative history anticipates that both (e) and (g) might apply at once and that then interest would run from a date no earlier than that provided by (e), but *at times* from the later date provided in (g). It further argues that an interpretation that treats the 1950 filing as within § 3771(g) will *always* result in (g) governing, contrary to the statutory intention.

We are not convinced that the legislative history will bear the weight of taxpayer's argument and hypothetical case but, in any event, the Government gave a sufficient answer. To Judge Levet's able discussion, 237 F.Supp. at 173–174, we would add only that the Congressional intention would seem to be satisfied where some part of the total overpayment could also be attributed to the claim for carryback of UEPC resulting from determination of the 1946 § 722 application. While proration might then be a possibility there is nothing in the statute requiring it.

As Judge Levet observed below and in Time, Inc. v. United States, 226 F.Supp. 680, 685 (S.D.N.Y.), aff'd on the opinion below, 337 F.2d 859 (2d Cir. 1964), § 722 applications are in a somewhat unique category because of the complicated, time-consuming process of computing a CAB PNI; Congress therefore allowed more time—namely, a year—before interest liability would exist on either side. For this reason, the Government claims, and Judge Levet correctly held, " 'application for refund or benefit'—was intended to include an application for any taxable year which claims the benefit for such year of a carryover or carryback of an unused excess profits credit resulting from the grant of section 722 relief for any prior or subsequent year."

The § 722 application filed in 1946 is not the reckoning point because it in itself led to no overpayment. That came into being only because of the 1950 claim. See Headline Publications, Inc. v. Commissioner of Internal Revenue, 263 F.2d 541 (2d Cir. 1959); Industrial Rayon Corp. v. United States, 155 F.Supp. 556, 140 Ct.Cl. 168 (1957).

Nor can the 1947 application be treated as a claim for refund resulting from a carryback. Pearl Assur. Co. v. United States, 324 F.2d 512 (Ct.Cl.1963), is quite distinguishable for it does not involve any § 722 determination.

██ Judge Levet's rejection of the claim for interest from December 1949 based on an equitable "use of money" doctrine is entirely sound. Neither Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), nor United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955), creates any such doctrine. Mutuality of result is irrelevant; for interest to run against the Government, taxpayer must point to a specific statutory provision. There is none for this situation. In any case, there is really no "prepayment" involved here. The tax was due in 1944. Only because Congress took into account the complicated redeterminations was taxpayer not liable for interest on the tax then due from an earlier date.

Affirmed.