UNITED STATES of America, Plaintiff,

v.

Dorothy P. AUGSPURGER, Executrix of the Will of Charles H. Augspurger, and Loeb, Rhoades & Co., Defendants.

No. CIV–76–595E.

United States District Court,
W. D. New York.

Feb. 25, 1981.

Louis J. Lombardo, Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Leland G. Cook, Jaeckle, Fleischmann & Mugel, Buffalo, N. Y., for defendant Augspurger.

Harry P. Trueheart, III, Nixon, Hargrave, Devans & Doyle, Rochester, N. Y., for defendant Loeb, Rhoades.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Now before me in this convoluted action arising from a tax refund erroneously paid to Charles H. Augspurger, now deceased, are plaintiff's motion for entry of judgment against Dorothy P. Augspurger, as executrix of said payee's Will, in the amount of $61,080.62 plus $7.88 for each day following June 30, 1980 (the return date for said motion), and for entry of judgment against Loeb, Rhoades & Co. pursuant to 26 U.S.C.

§ 6332(c)(1) in the amount of $16,960.77 plus $4.81 for each day following June 30, 1980, and against Loeb, Rhoades & Co. pursuant to 26 U.S.C. § 6332(c)(2) in the amount of $114,297.13 plus $2.40 for each day following June 30, 1980.

Plaintiff's motion for judgment as against Augspurger is unopposed by such defendant and accordingly will be granted.

Defendant Loeb, Rhoades & Co. ("Loeb") does object to plaintiff's calculations supporting both parts of its motion; however, plaintiff's motion must nevertheless be granted.

The confused and confusing background to this suit is set forth sufficiently in my two prior Memorandums and Orders herein and familiarity therewith is assumed.[1]

There are two distinct components to Loeb's argument. One is that the first and largest of the three penalty assessments against Augspurger that form the basis of plaintiff's levy against Loeb had been abated and that Loeb's liability is therefore limited to the sum of the two later assessments, or $41,773.99, plus interest. I have twice earlier expressly declined to rule whether the assessment had been abated.[2] Loeb insists that I must determine that the penalties were validly assessed and continue in force in order to hold Loeb liable. This position may not prevail.

The February 22, 1971 assessment herein was for a penalty imposed under 26 U.S.C. §§ 6671(b) and 6672,[3] which penalty may under section 6671(a) of the Internal Revenue Code be enforced by the same means as any tax, including the assessment process employed herein. Under 26 U.S.C. § 6213, the IRS generally may not proceed to assess (under 26 U.S.C. § 6203) most taxes without having given the taxpayer notice of a deficiency and an opportunity to contest the deficiency by suit in the United States Tax Court. Section 6213, however, does not apply to penalties under sections 6671–6672. Such may therefore be assessed against the person or entity from whom or which the penalty is due without any prior notice or opportunity to challenge it. It is therefore apparent that in the case of such penalty the "tax" for which an assessment, or a levy pursuant to an assessment, is made will not be a tax liability as finally adjudicated, but a tax liability as computed by the IRS and initially assessed against the taxpayer. The expression "tax" in Treas.Reg. 301.6331–1(a)(1) should be so construed. The statute clearly is designed to permit the IRS in the case of a penalty to assess the penalty without prior notice to the taxpayer to protect the ability of the United States to collect the penalty, only thereafter permitting the taxpayer to contest it by suit in the Tax Court or by an administrative request for abatement. The penalties provided in 26 U.S.C. § 6332(c) for failure to comply with a levy are important to the assessment process. As a penalty assessment itself may precede any judicial determination as to the validity *vel non* of the penalty and any attempt by the taxpayer to have the assessment abated, it is, therefore, substantially independent of these later steps. It would thus undermine the enforcement process to permit a person who was served with a levy, based on a facially valid assessment, and who thereafter failed without reasonable grounds to honor such levy to contest imposition of the statutory penalty on the grounds that the assessment on which it was based was either not valid or was abated after the date of the initial assessment.

The small number of decisions in which this issue has been raised consistently support this position by denying a person obliged to turn over funds under a tax lien the opportunity to argue that there was no legal basis for imposition of the lien. The only defenses available to such person are that he did not have custody or control of

**1.** Reported at 452 F.Supp. 659 (D.C., March 20, 1978) and 477 F.Supp. 94 (D.C., Sept. 13, 1979).

**2.** Charles H. Augspurger had applied to the Internal Revenue Service for an abatement herein and said application had met with initial success before the erroneous refund was issued herein. The record does not show a formal denial of Mr. Augspurger's request.

**3.** Now 26 U.S.C. § 6672(a).

property or rights belonging to the assessed taxpayer or that he had "reasonable grounds" for refusing the levy. *See, e. g., Commonwealth Bank v. United States*, 115 F.2d 327, 330 (6th Cir. 1940); *United States v. Long Island Drug Co.*, 29 F.Supp. 737, 740 (E.D.N.Y.1939), *rev'd on other grounds*, 115 F.2d 983 (2d Cir. 1940); *United States v. American Exchange Irving Trust Co.*, 43 F.2d 829, 830–31 (S.D.N.Y.1930). Accordingly, whatever happened to the liability of Charles H. Augspurger after the initial imposition of the February 22, 1971 assessment on which the Loeb levy was in part based is irrelevant to the situation before me. The assessment was, on its face, for a sum in excess of $210,000. Loeb at the time it was served with the levy held property of the taxpayer worth $200,000. It was required to comply with the levy and I have previously held that it failed, without reasonable grounds. It is liable for the penalty in the amount of $100,000 plus interest.

Loeb's other objection is grounded on the way this interest was computed by the United States. Such computation was based on two determinations, both of which Loeb challenges as legally impermissible: that interest continued and continues to accrue on Loeb's liability from the date of the levy until final payment is made to the IRS and not simply until payment was tendered to this court pursuant to my Order entered June 20, 1977; and, additionally, that the IRS was free to credit the two payments made to the IRS by the Clerk of this court March 27, 1978 and April 7, 1978 first to accrued interest and then to principal, so that of these payments a maximum amount was applied to interest (on which, if unpaid, interest does not accrue) and a minimum to principal (on which, if unpaid, interest does accrue) which allocation, of course, maximizes the amount of interest due.

It is true, as Loeb notes in its memorandum of law, that as a general rule interest ceases to accrue when money is paid into a court of competent jurisdiction pursuant to the court's order. However, this general rule normally does not apply to payments under the internal revenue laws.

Interest payments are viewed not as a penalty but simply as compensation for the United States's having been deprived of the use of the funds in question for the period until they are actually paid to the IRS and available as general revenue. *See, e. g., Vick v. Phinney*, 414 F.2d 444, 448 (5th Cir. 1969); *United States v. Los Angeles Soap Co.*, 153 F.2d 320, 321–22 (9th Cir. 1946); *Time, Incorporated v. United States*, 226 F.Supp. 680, 686–88 (S.D.N.Y.), *aff'd mem.*, 337 F.2d 859 (2d Cir. 1964); *P. Lorillard Company v. United States*, 226 F.Supp. 694, 698 (S.D.N.Y.), *aff'd mem.*, 338 F.2d 499 (2d Cir. 1964). This is true even where the funds were deposited into court (*see, United States v. Los Angeles Soap Co., supra*, at 321–22) or where the taxpayer has deposited with the IRS funds not intended as final payment for the tax on which interest is being assessed. *See, P. Lorillard Company v. United States, supra*, at 698. That the taxpayer no longer has the unrestricted use of the funds is not sufficient to toll the accrual of interest. Some substantial additional factor must be present, such as injury to other creditors of a bankrupt, before the deposit of funds into a court will stop the accrual of interest. *Brandt & Brandt Printers, Inc. v. United States*, 300 F.2d 457, 460 (Ct.Cl.1962).

Although I interpret the expression "without prejudice" in the order entered June 20, 1977 on stipulation of the parties as referring only to the issue of entitlement to the fund as a whole and not to the issue of interest, Loeb has not shown that interest should not continue to accrue herein, especially as it agreed to the deposit of the funds into court and inasmuch as such deposit was invested by the Clerk in interest-bearing certificates of deposit, the interest from which largely if not entirely offset the accrual of interest to the IRS.

Additionally, Loeb has not objected to the form of the United States's demand for interest pursuant to 26 U.S.C. § 6332(c)(1). Such claim was determined to be moot in my Memorandum and Order entered March 20, 1978, and the United States, although recognizing that the claim was therein and thereby declared moot, has not formally moved to reargue such decision. However,

in the absence of any procedural objection by Loeb, I will treat the relevant portion of plaintiff's motion as so requesting. So treating it, it must be granted, to the extent of awarding interest as computed by plaintiff on its claim under 26 U.S.C. § 6332(c)(1).

Loeb supports its claim that it was error for the United States not to credit the payments to the IRS by the Clerk of this court first to principal and only then to interest only by an IRS Revenue Ruling, *Rev.Rul.* 58–239, 1958–1 Cum.Bull. 94. This revenue ruling, however, deals only with voluntary partial payments by taxpayers; it provides that such taxpayers have the right to specify the allocation of such payments among tax, penalty and interest and that, in the absence of any such specification, the IRS would allocate first to tax and then to interest, and allocate to earlier years before later years. As the taxpayer is permitted to specify the allocation of a voluntary partial payment so as to minimize its total liability, it was reasonable for the IRS to adopt a rule which would reasonably be expected to minimize total liability where the taxpayer has made a voluntary payment but not specified the allocation. Here the payment by the Clerk to the IRS was not voluntary but was pursuant to an order which Loeb strenuously opposed and then moved to reargue. Neither the letter nor the principle of *Rev.Rul.* 58–239 applies to this action. Neither Loeb's nor my own research has supplied any other authorities that would forbid the conduct complained of here.

For these reasons, it is hereby ORDERED that the last sentence of my Memorandum and Order entered March 20, 1978 is deleted *nunc pro tunc* such date; and it is further hereby

ORDERED that plaintiff have judgment against defendant Loeb, Rhoades & Co. pursuant to the provisions of section 6332(c)(1) of the Internal Revenue Code of 1954 in the sum of $16,960.77 as of June 30, 1980, and an additional sum of $4.81 for each day after June 30, 1980 as interest until the entry of this Memorandum and Order; and it is further hereby

ORDERED that plaintiff have judgment against defendant Loeb, Rhoades & Co. pursuant to section 6332(c)(2) of the Internal Revenue Code of 1954 in the sum of $114,297.13 as of June 30, 1980, plus an additional sum of $2.40 for each day after June 30, 1980 as interest[4] until the entry of this Memorandum and Order; and it is further hereby

ORDERED that plaintiff have judgment against defendant Dorothy P. Augspurger, in her capacity as Executrix of the Will of Charles H. Augspurger, deceased, pursuant to plaintiff's claim for erroneous refund in the sum of $61,080.62 as of June 30, 1980, and an additional daily amount of $7.88 for each day after June 30, 1980 as interest until the entry of this Memorandum and Order; and it is further hereby

ORDERED that the costs of this action are assessed jointly and severally against the defendants.

---

4. My own calculations would indicate that, at what plaintiff's affidavits affirm to be the presently-applicable rate of interest of 12% per annum, interest would accrue on a principal sum of $100,000 at a daily rate of $32.88, not $2.40 as requested by plaintiff. I decline, however, to substitute my own calculations for those of the United States herein.