In re B & P ENTERPRISES, INC., and William Bruce Prewett and Anita Suzanne Prewett, Debtors.

Bankruptcy Nos. 84–23762–K, 85–20756–K.

United States Bankruptcy Court, W.D. Tennessee, W.D.

Aug. 22, 1986.

Gregory Nelson, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Gary Vanasek, Asst. U.S. Atty., Memphis, Tenn., for U.S.

William A. Cohn, Memphis, Tenn., for debtors.

## MEMORANDUM AND ORDER

DAVID S. KENNEDY, Bankruptcy Judge.

In these jointly administered Chapter 11 cases the above-named debtors seek, in pertinent part here, to allocate payments under a joint Chapter 11 reorganization plan to the Internal Revenue Service ("I.R.S.") so that the "trust fund" portion of the I.R.S.' claim will be credited first until paid in full. I.R.S. objects to such treatment.

### BACKGROUND

Although the record of this proceeding is sparse, the case record as a whole reflects that on October 18, 1984, the debtor, B & P Enterprises, Inc., filed an original, voluntary petition under Chapter 11 of the Bankruptcy Code; and on February 25, 1985, the debtors, William Bruce Prewett and Anita

Suzanne Prewett, filed an original, voluntary petition under Chapter 11. On May 3, 1985, an order was entered allowing for a joint administration of the above related estates.

Although a portion of the I.R.S.' claim is disputed, debtors owe the I.R.S. approximately $29,000.00 in pre-Chapter 11 corporate taxes and penalties for the third quarter of 1984 of which $17,024.81 represents "trust taxes".[1] Prior to bankruptcy, the I.R.S. had not instituted collection efforts or otherwise attempted "enforced collection measures" against either the corporate debtor or Mr. and Mrs. Prewett. Of course, the bankruptcy filings triggered the automatic stay provisions of 11 U.S.C. § 362(a) which prevented the I.R.S. from instituting collection efforts outside the bankruptcy court. Debtors' Chapter 11 reorganization plan provides, inter alia, that the I.R.S. shall be paid its allowed claim in full (approximately $29,000.00) in deferred payments with an appropriate rate of interest in accordance with the *mandatory* provision contained in 11 U.S.C. § 1129(a)(9)(C). Specifically, § 2.2 of the debtors' joint Chapter 11 plan provides, however, that the I.R.S. must first apply all payments under the joint plan to the "trust fund" portion of FICA and withholding taxes of the debtor, B & P Enterprises, Inc., until paid in full. On March 28, 1986, the joint plan was confirmed, however, the instant matter was expressly reserved by consent of the debtors and the I.R.S. and was subsequently argued before this court on August 11, 1986. A disposition of the instant matter was taken under advisement.

## QUESTION PRESENTED

The ultimate question for judicial determination is whether the debtors should be allowed to allocate payments under their joint Chapter 11 plan so that the "trust fund" portion of the I.R.S.' allowed claim will be credited first until paid in full.

1. Debtors, Mr. and Mrs. Prewett, are apparently "responsible persons" as contemplated in 26

## POSITION OF I.R.S.

I.R.S. essentially asserts, inter alia, that *any* bankruptcy case under either Chapter 7, 9, 11 or 13 of the Bankruptcy Code is, ipso facto, sufficient "court action" to render the debtor's (or trustee's) payments "involuntary".

## POSITION OF DEBTORS

Debtors primarily assert that payments under a Chapter 11 plan are "voluntary".

## DISCUSSION

■ "Trust fund" taxes are those taxes withheld by employers from employees' paychecks that are required to be held in trust pursuant to 26 U.S.C. § 7501. Other corporate tax liabilities, such as corporate income taxes and the employer's share of Social Security taxes, are generally denominated as "non-trust fund" taxes. The following provisions of the Internal Revenue Code of 1954 govern the collection of trust fund taxes: 26 U.S.C. § 3402 requires that employers making payments of wages deduct and withhold income taxes for such wages; 26 U.S.C. § 3402 also establishes that the employer should be held liable for the payment of the tax required to be deducted and withheld; 26 U.S.C. § 3102(a) places the duty of collection upon the employer; 26 U.S.C. § 7501 provides that the withheld or collected taxes must be held in a special trust fund for the United States; and 26 U.S.C. § 6672 imposes personal liability upon those corporate officials in charge of collecting the trust fund taxes who fail to remit these funds to the United States.

■ It is undisputed and clear that a non-bankruptcy taxpayer who makes a "voluntary" tax payment to the I.R.S. may designate, at the time of payment, the manner of allocation of such payment among tax, interest and penalty. *Muntwyler v. United States*, infra; *O'Dell v. United*

U.S.C. § 6672.

*States,* 326 F.2d 451 (10th Cir.1984); and on the other hand, a taxpayer who makes an "involuntary" payment may not designate the manner of its allocation. In the latter event the I.R.S. has full discretion to apply such payment to maximize the amount of assessed tax that may be collected. *United States v. DeBeradinis,* 395 F.Supp. 944 (D.C.Conn.1975), aff'd 538 F.2d 315 (2nd Cir.1976); *United States v. Augspurger,* 508 F.Supp. 327 (W.D.N.Y.1981). In the absence of a designation or agreement as to how tax payments are to be applied, the I.R.S. may apply the payment received against any amount owed. *In re Tom Le Duc Enterprises, Inc.,* 47 B.R. 900 (D.Mo. 1984).

Courts which have addressed the allocation question have adopted the United States Tax Court's definition of an "involuntary" payment set forth in *Amos v. Commissioner,* 47 T.C. 65 (1966). It provides:

"An involuntary payment of federal taxes means any payment received by agents of the United States as a result of a distraint or levy from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."

Policy Statement P–5–60, reprinted in Internal Revenue Manual (CCH) 1350–15, provides that "the taxpayer, of course, has no right of designation in the case of collections resulting from enforced collection measures".

In *Muntwyler v. United States,* 703 F.2d 1030, 1033 (7th Cir.1983), the Seventh Circuit Court of Appeals stated:

"The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual seizure of property or money as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due."

The following cases support the debtors' position:. *In re A & B Heating & Air Conditioning, Inc.,* 53 B.R. 54 (Bankr.Ct. M.D.Fla.1985), aff'd CCH Bankr.Law Rep. ¶ 71,220 (D.C.M.D.Fla.1986); *In re Energy Resources Co., Inc.,* 59 B.R. 702, 705–6 (Bankr.Ct.Mass.1986); *In re Lifescape, Inc.,* 54 B.R. 526 (Bankr.Ct.Colo.1985); *In re Franklin Press, Inc.,* 52 B.R. 151 (Bankr. Ct.Fla.1985); accord *In re Hartley Plumbing Company, Inc.,* 32 B.R. 8 (Bankr.Ct.M. D.Ala.1983).

I.R.S. relies upon the following cases: *In re Frost,* 47 B.R. 961 (D.C.Kan.1985); *In re Avildsen Tools and Machines, Inc.,* 40 B.R. 253 (D.C.N.D.Ill.1984); *In re Mister Marvins, Inc.,* 48 B.R. 279 (E.D.Mich.1984); *In re Bulk Sale of Inventory, etc.,* 6 Kan. App.2d 579, 631 P.2d 258 (1981); *Muntwyler v. United States,* 703 F.2d at 1034 n. 2.

The bankruptcy court case of *In re A & B Heating & Air Conditioning Co., Inc.,* supra, at p. 57 should be specifically observed:

"Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy. Unlike a taxpayer faced with a government instituted collection proce▮▮▮▮ ▮▮ich may lead ultimately to ▮▮▮▮▮▮ ▮e taxpayer's assets, a Cha▮▮▮ ▮▮ebtor enjoys great latitude in ho▮ ▮▮▮ ▮f a plan is proposed and thus how and when the I.R.S. will be paid. § 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the I.R.S. and it is the freedom afforded by these options which dictates the conclusion that payments to the I.R.S. pursuant to a confirmed Chapter 11 plan of reorganization are voluntary."

*In re Avildsen Tools & Machine, Inc.,* 794 F.2d 1248, CCH Bankr.Law Rep. ¶ 71,-

245 (7th Cir.1986), should also be observed. Although the Seventh Circuit expressly stated 794 F.2d at 1252, CCH Bankr.Law Rep. at p. 89,407 that "[W]e do not have to decide whether a payment for delinquent pre-bankruptcy petition taxes made to the government while the corporation is in bankruptcy is voluntary or involuntary ...," this case contains a good discussion of the policies behind our tax laws as they relate to the instant proceeding.[2]

## POLICY CONSIDERATIONS

Tension perhaps exists here between the general policies of the bankruptcy and internal revenue laws. Congress has encouraged financially distressed debtors to pay their debts under Chapter 11 (or 13) of the Bankruptcy Code rather than opting for liquidation. See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 220 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. It is the statutory duty of the I.R.S. to collect and maximize taxes owed to the government. The I.R.S.' policy in applying involuntary payments initially against non-trust fund taxes is consistent with the purposes of 26 U.S.C. § 6672 to encourage those persons charged with the collection of withholding taxes from employee wages to pay these sums to the government.

## CONCLUSIONS

Although this court is not overly sympathetic with debtors who fail to pay their trust fund taxes, it is not prepared to adopt a per se or inflexible rule that that the mere filing of a Chapter 11 case and the ensuing confirmation process, standing alone, should automatically disallow (or allow) a trustee or debtor-taxpayer to allocate payments under a plan to the I.R.S. so that the "trust fund" portion of the I.R.S.' claim always will be credited last (or first until paid in full).[3] Thusly, a Chapter 11 case, in and of itself, should not, ipso facto, result in "enforced collection measures" as contemplated in Policy Statement P–5–60, supra. Notwithstanding the "voluntary-involuntary" or "court action-non-court action" dichotomy, the allocation question in a Chapter 11 case under the Bankruptcy Code should be left to judicial discretion to be decided on a case-by-case basis and analysis with the burden of proof being on the trustee or Chapter 11 debtor-taxpayer to demonstrate exceptional or special circumstances or equitable reasons warranting such allocation.[4] The question should

2. It is interesting to note that the Seventh Circuit in *Muntwyler v. United States,* 703 F.2d at 1034 n. 2, stated in ▪▪▪▪ footnote two that "[t]he government ▪▪▪▪ been correct in its claim if the co▪▪▪▪ had been in bankruptcy, which it ▪▪▪▪ it is remembered that *Muntwyler* inv▪▪▪▪ mmon law, non-judicial assignment for the benefit of creditors.)

3. Although *Muntwyler v. United States,* supra, involved a non-judicial assignment for the benefit of creditors, the Seventh Circuit held that the mere filing of a claim was not sufficient to render payments made by the taxpayer involuntary and, therefore, the taxpayer could direct the allocation of funds paid to the I.R.S. Query, why should a Chapter 11 debtor-taxpayer be automatically penalized merely for filing a Chapter 11 reorganization case rather than opting for, e.g., a non-judicial assignment for benefit of creditors? Congress has encouraged rehabilitation over liquidation. Compare 11 U.S.C. § 525(a) (and the underlying legislative history) which prohibits certain discriminatory treatment by a governmental unit. H.R.Rep. No. 595, 95th Cong., 1st Sess. 366–67 (1977); S.Rep. No. 989 95th Cong. 2nd Sess. 81 (1978). Although the instant matter is not specifically enumerated in § 525(a), this Section of the Code also prohibits a governmental unit from discriminating against a person solely because of the person's insolvency before the bankruptcy petition was filed or during the case. The cited legislative history of the Code indicates that the enumerated list of discriminatory practices contained in § 525(a) is not exhaustive. "The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination." H.R. Rep. No. 95–595, supra, at 367, U.S.Code Cong. & Admin.News 1978 p. 6323.

4. It has been said that a bankruptcy case is a unique kind of legal matter. The voluntary case is not, in and of itself, a contested proceeding. The typical bankruptcy case, although itself an uncontested matter, may be characterized as an umbrella under which numerous related lawsuits may be litigated. B. WEINTRAUB & A. RESNICK, *Bankruptcy Law Manual,* ¶ 6.04, p. 6–7. E.g., the mere filing of a proof of claim form in a bankruptcy case does not involve "judicial action". *In re Cruz,* 357 F.Supp. 1118 (D.C.Puerto Rico 1973). Moreover, a proof of claim executed and filed in accordance with the

be considered in light of, inter alia, the structure and general purposes of both the internal revenue and bankruptcy laws. Bankruptcy Courts should look closely at the totality of the pre and post-bankruptcy facts and circumstances before allowing (or disallowing) such allocation. Among other facts a bankruptcy court should consider to determine whether a Chapter 11 debtor (or trustee) should be allowed to allocate payments are as follows: the history of the debtor; the absence or existence of pre-bankruptcy collection or "enforced collection measures" of the I.R.S. against the corporation and responsible corporate officers; the nature and contents of a Chapter 11 plan (e.g., last resort liquidation or reorganization); the presence, extent and nature of administrative and/or court action; the presence of pre- or post-bankruptcy agreements between the debtor (or trustee) and the I.R.S.; and the existence of exceptional or special circumstances or equitable reasons warranting such allocation.

Here, the debtors have simply failed to demonstrate any exceptional or special circumstances or equitable reasons warranting such allocation.[5] Considering the allocation question in light of the structure and general purposes of both the internal revenue and bankruptcy laws, the court hereby denies under a totality of the particular facts and circumstances the debtors' request seeking to allocate payments under their joint Chapter 11 plan to the I.R.S. Thusly, in the instant Chapter 11 cases the I.R.S. may designate the manner of the allocation of payments in accordance with applicable non-bankruptcy law and policy—i.e. the I.R.S. may apply the first payments under the joint Chapter 11 plan to the non-trust fund taxes until paid in full.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. Accordingly,

IT IS SO ORDERED.

---

bankruptcy rules shall constitute prima facie evidence of the validity and amount of the claim. Bankr.Rule 3001(f); 11 U.S.C. § 502(a). Cf. Bankr.Rules 3007 and 9014.

**5.** A separate order is being entered contemporaneously herein allowing the I.R.S. to setoff a certain tax refund check arising out of related litigation commenced by the debtors against the I.R.S. The question of contempt and the pending adversary proceeding commenced by the debtors against the I.R.S. will also be dealt with in separate orders.