**In re NEWPORT OFFSHORE, LTD., Debtor.**

**Bankruptcy No. 8500723.**

United States Bankruptcy Court, D. Rhode Island.

July 14, 1987.

Matthew J. McGowan, Salter, McGowan, Swartz & Holden, Inc., Providence, R.I., for trustee.

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for I.R.S.

ARTHUR N. VOTOLATO, JR., Bankruptcy Judge.

## DECISION AND ORDER OVERRULING THE OBJECTION BY THE INTERNAL REVENUE SERVICE TO ARTICLE III OF THE TRUSTEE'S PLAN OF REORGANIZATION

Heard on the objection of the United States, on behalf of the Internal Revenue Service (IRS), to that portion of the Chapter 11 trustee's plan of reorganization which seeks to designate the manner in which IRS should apply plan payments to prepetition tax liabilities.[1]

Article III of the plan proposes to pay all Class Four claims, those of all the taxing authorities,[2] through "payment ... of deferred cash payments over a period not in excess of six years after the date of assessment of such claim" pursuant to 11 U.S.C. § 1129(a)(9)(C). Interest on those claims will be paid according to the rate set forth in 26 U.S.C. § 6621. In addition, and in dispute, is that part of the plan which designates how the tax payments should be applied. Specifically, the plan provides that payments be credited first to the "'trust fund'[3] portion of the ... oldest taxes," second to the "interest on such trust fund portion of such taxes," and third, to "the oldest non-trust fund portion of the remaining tax obligations and the interest thereon." *See* Trustee's Plan of Reorganization, Article III at 7–8. IRS objects to the application of the tax payments as proposed,[4] and argues that it be permitted to apply the tax payments first to the non-trust fund taxes, in accordance with established IRS policy. *See Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983).

IRS and the trustee agree that if the tax payments are "voluntary," the debtor may designate how the payments should be applied. *See Muntwyler v. United States, supra,* at 1032. Conversely, if the payment is involuntary, the debtor does not have the power to direct application of the payments.

If it had its druthers, IRS would apply payments first to the non-trust fund taxes due, *see* IRS Memorandum in Support of the Objection to the Trustee's Plan at 5, essentially the opposite of how the trustee would direct the application of payments. Not surprisingly, the purpose of this IRS policy is to preserve the personal liability, created by 26 U.S.C. § 6672, of "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title." If IRS were unable to collect the full amount of trust taxes from the debtor, it then could proceed against the "responsible person," as defined by 26 U.S.C. § 6671(b), for the unpaid portion of those taxes. There is no personal liability for

---

**1.** The order confirming the plan was signed on April 3, 1987, but this issue was reserved pending a ruling on the objection by IRS.

**2.** Class Four claims consist of taxes owed to IRS, the State of Rhode Island, the Rhode Island Department of Employment Security, and the City of Newport.

**3.** Trust fund taxes are those required to be withheld pursuant to 26 U.S.C. § 7501 and which "shall be held to be a special fund in trust for the United States." They include the tax collected from employee wages, and the employee share of FICA tax. *Holcomb v. United States,* 622 F.2d 937, 938 (7th Cir.1980).

**4.** The other taxing authorities which did not object to the manner in which the plan directs payments to be applied to Class Four claims are bound by the order confirming the plan to apply them as directed. 11 U.S.C. § 1141(a).

unpaid non-trust fund taxes. *See In re Mister Marvins, Inc.,* 48 B.R. 279, 280 (E.D.Mich.1984). While IRS policy is to apply involuntary payments first to non-trust fund obligations, "there is no tax code provision regarding this subject." *In re Technical Knockout Graphics, Inc.,* 68 B.R. 463, 465 (9th Cir.B.A.P.1986).

The most frequently cited definition of an involuntary payment, *Muntwyler v. United States, supra,* at 1032, is that of the Tax Court in *Amos v. Commissioner,* 47 T.C. 65, 69 (1966):

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

However, in applying that definition the Seventh Circuit has stated that

> [t]he distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money, as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim.

703 F.2d at 1033 (emphasis in the original). In *Muntwyler,* which involved a non-judicial assignment for the benefit of creditors, the Seventh Circuit held that "merely filing a claim for back taxes" absent some form of "enforced collection measures" did not render the payment involuntary. *Id.* at 1033. IRS contends that the filing of a bankruptcy petition is sufficient "court action" under *Muntwyler* to render "any payment [of taxes] in a bankruptcy proceeding ... *per se* involuntary." *See* IRS Memorandum at 15. Apparently, IRS draws this conclusion from note 2 of *Muntwyler,* 703 F.2d at 1034, where the court stated that "[t]he Government might have been correct in its claim if the corporation had been in bankruptcy, which it is not." However, the note continues "[a]n assignment for the benefit of creditors is an act of bankruptcy [under the 1898 Act] and presumably, any creditor, including the Government, could have proceeded to file an involuntary petition for bankruptcy based thereon." At best, it is unclear whether the Seventh Circuit meant that the requisite "court action" referred to filing a proof of claim, or to the filing of an involuntary bankruptcy petition, followed by a proof of claim. The difference between the two forms of "court action" is significant, and for our purposes is in fact dispositive.

The trustee disagrees with the *per se* test advanced by IRS, and reads *Muntwyler* in a different light. "In the instant matter, the IRS has merely filed a proof of claim. There has been no court action with respect to the IRS' claim, let alone 'court action [or administrative action] [5] resulting in an actual seizure of money or property as in a levy' " (citing *Muntwyler, supra,* at 1033). *See* Trustee's Memorandum at 7. The trustee construes the phrase "resulting in an actual *seizure* " to apply to court action as well as administrative action.[6] In any event, the trustee argues that some type of " 'enforced collection measure,' " *Muntwyler, supra,* at 1033, beyond the filing of a proof of claim, is necessary to qualify as "involuntary," payments made under a Chapter 11 plan of reorganization.

Several courts have already faced the issue of determining voluntary versus involuntary payments, within the context of a bankruptcy case. The trustee's position that payments to IRS pursuant to a Chapter 11 plan are voluntary is supported by the following: *In re Technical Knockout Graphics, Inc., supra; In re Energy Resources Co., Inc.,* 59 B.R. 702 (Bankr.D.

---

**5.** The trustee's memorandum omitted the bracketed portion of the quotation.

**6.** IRS reads the language more restrictively and, apparently, feels that the qualifier "resulting in an actual seizure," applies only to "administrative action," and that *any* "court action" within the bankruptcy case, even if it involves only the filing of a proof of claim, renders the payment involuntary.

Mass.1986); *In re Lifescape, Inc.,* 54 B.R. 526 (Bankr.D.Colo.1985); *In re A & B Heating & Air Conditioning, Inc.,* 53 B.R. 54 (Bankr.M.D.Fla.1985); *In re Franklin Press, Inc.,* 52 B.R. 151 (Bankr.S.D.Fla. 1985). On the other side of the coin, although none have phrased their conclusions as strongly as a *per se* rule, the following courts support the IRS position that payments of tax claims in bankruptcy are involuntary: *In re Mister Marvins, Inc., supra; In re Frost,* 47 B.R. 961 (D.Kan.1985); *Matter of Avildsen Tools & Machine, Inc.,* 40 B.R. 253 (N.D.Ill.1984); *aff'd,* 794 F.2d 1248 (7th Cir.1986); *In re Vincent-McCall Co.,* 68–2 USTC (CCH) ¶ 9591 (E.D.Wisc. 1968) (Act case, referee's opinion). In affirming the district court in *Avildsen Tools,* however, the Seventh Circuit stated "[w]e do not have to decide whether a payment for delinquent pre-bankruptcy petition taxes made to the government is voluntary or involuntary" since the debtor had breached its agreement as to how the tax payments would be applied. 794 F.2d at 1252. Since the debtor breached its agreement with IRS, the government was no longer bound as to how the payments would be applied. *Id.* at 1254. It appears, therefore, that no Court of Appeals has squarely decided the issue of whether payments under a plan pursuant to § 1129 are voluntary or involuntary.

*In re B & P Enterprises, Inc.,* 67 B.R. 179 (Bankr.W.D.Tenn.1986) reaches a more flexible conclusion about midway between the positions taken by the parties. There, the bankruptcy court rejected both the IRS *per se* rule, and any ruling wherein the trustee or debtor-in-possession could unilaterally direct the allocation of payments under a confirmed plan to the trust fund portion of the IRS claim. *Id.* at 183. Instead, the court held that such questions should be decided on a case-by-case basis, and set out what it considered were the

relevant factors in the analysis.[7] *Id.* at 184.

We feel that the Court's approach in *In re B & P Enterprises, Inc., supra,* is more workable than either of the rigid approaches advocated by the parties. Taking full advantage of our new found flexibility, and considering the "totality of the facts and circumstances," *id.* at 184, of this case, we conclude that the trustee should be allowed to direct the application of payments to IRS as set forth in the plan. Except for filing a proof of claim, the only involvement of IRS in any court action in this case has been to press the objection to confirmation. IRS has not (nor had it previously) taken any "enforced collection measures." The plan calls for reorganization as a going concern, rather than liquidation of assets and conversion to Chapter 7. Most importantly, however, the funding for this plan comes from a third party, Allied Marine Associates. Other courts have held that third-party funding alone is sufficient to render payments to IRS voluntary. *See In re Energy Resources Co., Inc., supra; In re Franklin Press, Inc., supra.* In the real world of business reorganization, most successful Chapter 11 plans depend, in part, at least, on the infusion of funds provided by outside investors. The inflexible application of the *per se* rule advanced by IRS would remove the initiative of former principals to seek outside investors, who voluntarily inject needed cash into the estate, and would, as a consequence, either inhibit or eliminate altogether the likelihood of a viable Chapter 11 plan. If the purpose of Chapter 11 is to rehabilitate rather than liquidate debtors, the Court's role in this process is greatly enhanced by allowing the judge to review each case on its own merits and to confirm those which meet the requirements of § 1129. Using that approach in this case, we conclude that the third party payments constitute sufficient "special circumstanc-

---

**7.** The factors include: (1) the history of the debtor; (2) whether IRS has taken any pre-bankruptcy collection or "enforced collection measures" against the debtor or the appropriate responsible person; (3) the nature of the Chapter 11 plan (e.g., reorganization or liquidation);

(4) the presence, nature and extent of administrative and/or court action; (5) existence of exceptional or special circumstances warranting allocation provided by the plan. *In re B & P Enterprises, supra,* 67 B.R. at 184.

s," *In re B & P Enterprises, Inc., supra,* B.R. at 184, to allow the trustee to allocate such payments first, to the trust fund portions of the debtor's tax liabilities and, thereafter, to the non-trust fund amounts.

IRS expends considerable argument on two points which deserve comment. IRS argues that allowing the allocation of payments to trust fund taxes unfairly benefits the "responsible person" as defined by the Internal Revenue Code, and shifts the risk of non-payment of the tax liability to the government. In this case, however, IRS fails to identify the responsible person to whom it ascribes such remarkable influence over the plan proposed by the trustee.[8] That person, who we surmise (since IRS has not told us) might be the "responsible person," a mid-level financial employee, is neither a principal of the debtor nor a major stockholder, and does not directly benefit from the plan (except perhaps for payment of a priority wage claim, along with all other employees). The contention that the sole purpose of this part of the plan is to benefit Kevin Walsh, the controller, is a theoretical argument with no factual or practical support. IRS also argues that the plan could likely fail as soon as the trust fund tax liabilities are paid, and the responsible person relieved of any potential assessment under 26 U.S.C. § 6672. As we view it, a plan likely to fail in the manner IRS describes would not be confirmable under 11 U.S.C. § 1129(a)(11) ("[c]onfirmation of the plan is not likely to be followed by the liquidation, or need of further financial reorganization of the debtor ... unless such liquidation or reorganization is proposed in the plan"). We have already found that the trustee's plan complies with the requirements of § 1129, that rehabilitation is likely, and that failure (either prior or subsequent to payment of trust fund taxes) is not the expected route for this debtor.

Therefore, for the foregoing reasons, Article III of the trustee's plan of reorganization regarding the treatment of Class Four tax claims is confirmed, and IRS is ordered to apply the payments as designated in the plan.

---

**8.** IRS does not argue that the trustee is the "responsible person" seeking to avoid personal